UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  *Plaintiff,*<br>  v.<br>CAREEMA LEWIS,<br>  *Defendant.* | No. 3:19-cr-241 (VAB) |

**RULING ON MOTION FOR RESTITUTION**

On September 26, 2019, Careema Lewis ("Defendant") pled guilty to a one-count Information that charged her with Theft of Mail by a Postal Employee under 18 U.S.C. § 1709. Information, ECF No. 1 (Sept. 26, 2019); Plea Agreement, ECF No. 5 (Sept. 26, 2019).

The Government and Ms. Lewis agreed that the amount of restitution would be determined at a later date. Plea Agreement at 2.

On March 30, 2020, the Court held a telephonic hearing on filings submitted by the Government and Ms. Lewis, concerning the total amount of restitution. Minute Entry, ECF No. 36 (Mar. 30, 2020); Ms. Lewis's Response to the Sent. Mem., ECF No. 33 (Mar. 13, 2020) ("Def.'s Mem."); Gov't Reply, ECF No. 34 (Mar. 20, 2020). The Government filed a motion for a restitution order the same day. Mot., ECF No. 37 (Mar. 30, 2020).

The Court now considers what restitution Ms. Lewis owes.

For the reasons explained below, the Court **GRANTS** the Government's motion and orders Ms. Lewis pay restitution in the amount of **$1192.16**.

**I.  STANDARD OF REVIEW**

The Mandatory Victim Restitution Act ("MVRA") "provide[s] full compensation to victims of certain types of crimes . . . including crimes against property in which an identifiable victim has suffered a pecuniary loss[.]" *U.S. v. Smathers*, 879 F.3d 453, 459 (2d Cir. 2018); *see*

1

*also* 18 U.S.C. §§ 3663A and 3664 (codified provisions of the MVRA). "[T]he term 'victim' means a person directly and proximately harmed as a result of the commission of an offense . . . ." 18 U.S.C. § 3663A(a)(2). Because restitution is a compensatory remedy and because the MVRA limits restitution to the amount of a victim's actual loss, "a restitution order must be tied to the victim's actual, provable, loss." *U.S. v. Zangari*, 677 F.3d 86, 91 (2012) (citations omitted); *see also U.S. v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006) ("[I]t can be fairly said that the 'primary and overarching' purpose of the MVRA 'is to make victims of a crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.'" (quoting *U.S. v. Simmonds*, 235 F.3d 826, 831 (3d Cir. 2000)); *see also Paroline v. U.S.*, 572 U.S. 434, 456 (2014) ("The primary goal of restitution is remedial or compensatory, but it also serves punitive purposes[.]" (citations omitted)).

The victim "must have endured a financial loss that was 'directly and proximately' caused by a defendant's fraud." *U.S. v. Calderon*, 944 F.3d 72, 95 (2d Cir. 2011) (emphasis omitted) (quoting *U.S. v. Paul*, 634 F.3d 668, 676 (2d Cir. 2011)). "[A] district court cannot properly order restitution under the MVRA unless the victim's harm resulted from the offense of conviction[.]" *U.S. v. Reifler*, 446 F.3d 65, 135 (2d Cir. 2006). "So to say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result." *Paroline v. U.S.*, 572 U.S. 434, 444 (2014).

"'Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *U.S. v. Green*, No. 3:16-cr-20 (MPS), 2016 WL 6652442, at *3 (D. Conn. Nov. 7, 2016) (quoting 18 U.S.C. § 3664(e)). The Government "bears the burden of establishing by a preponderance of the evidence that each individual it claims is entitled to restitution was actually a 'victim[,]'" *Calderon*, 944 F.3d at n.9 (2d Cir. 2019) (quoting *U.S. v.*

*Archer*, 671 F.3d 149, 173 (2d Cir. 2011)), and the amount of loss sustained by a victim, 18 U.S.C. § 3664(e). "The preponderance standard 'must be applied in a practical, common-sense way.'" *U.S. v. Bryson*, No. 3:13-cr-00041 (JCH), 2015 WL 4619637, at *1 (D. Conn. July 31, 2015) (quoting *U.S. v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013)).

II. **DISCUSSION**

In December of 2019, the Government estimated the amount of restitution would total between $333.00 and $1,830.00. Gov't Sent. Mem., ECF No. 20 at 7 (Dec. 28, 2019). The Government, after listing the victims and restitution amounts associated with each, requested a total of $1,801.16 in restitution. *Id.* at 16.

Ms. Lewis requested that a final determination of losses occur within 90 days of sentencing, as permitted under 18 U.S.C. § 3664(d)(1), because the Government provided the defense with restitution claims only one day before sentencing. Def. Sent. Mem., ECF No. 22 at 1 (Dec. 18, 2019). At that time, Ms. Lewis noted "that many of the people for whom the government is seeking restitution do not appear to be 'victims' for restitution purposes . . . . Rather, they are people who have come forward and reported that they lost money in the mail," but the Government has not offered evidence tying their losses to Ms. Lewis. *Id.* at 1–2.

Ms. Lewis filed another response in preparation for the hearing. She argues that she should owe only $97.16 in restitution because many of the victims alleged by the Government do not constitute victims under the MVRA. In her view, "[a]n allegation that money or a gift card disappeared during the years-long time frame that Ms. Lewis worked at the post office is not enough to warrant restitution under the MVRA." Def.'s Mem. at 4. In her view, the Government has met their burden of proof only for Victims #2 and #18, *id.* at 4, and thus she owes only $97.16. Ms. Lewis outlines her arguments regarding each victim in her memorandum. *Id.* at 5-8.

The Government disagrees and amends its total amount of restitution to $1,860.16, as another victim not previously included in the original sentencing memorandum has come forward. Gov't Reply at 1.

In its view, restitution is owed to all victims because of the theft of test pieces of mail sent through the Plymouth Post Office in November and December of 2018 by Ms. Lewis. *Id.* at 2. Three of the five test pieces of mail were stolen, all three stolen pieces of mail "were determined to have been stolen by Careema Lewis." *Id.* The investigation revealed "there existed 3/5 odds, or a 60% chance, that a gift card sent through the Plymouth Post Office would be stolen. Once the card was stolen, there existed 3/3/ odds, or a 100% chance, that it was stolen by Careema Lewis." *Id.* On January 17, 2019, based on the postal stamps visible on envelopes, Ms. Lewis had collected mail over the course of the week which correlated to roughly forty-five victims. *Id.* at 3. "The sheer volume of mail that Careema Lewis was stealing makes the claim of someone who lost mail during this time frame" indicates that Ms. Lewis, not another plausible explanation, was the cause of the loss. *Id.* at 3–4.

As to Victim E.D., the Government argues that there is a sufficient connection between Ms. Lewis and the theft, despite Ms. Lewis's claim that she never admitted to taking any amount of cash. *Id.* Furthermore, it was "the E.D. theft investigation [that] ultimately led to her conviction in this case." *Id.* at 4. The mail found on her person and in her vehicle on January 17, 2019 included a variety of colors and sizes of envelopes, and priority mail packaging. *Id.*

As to Victim K.S., the Government seeks to include this victim in the requested restitution amount because Victim K.S. "alleges specific losses of mail that passed through the Plymouth Post Office within the same time frame that [Ms. Lewis] was found to have been stealing mail . . . ." *Id.* at 5.

The Court disagrees, in part.

18 U.S.C. § 3664(a) demands a district court look to the presentence report authored by a probation officer to gather sufficient information to construct a restitution order. A district court may seek additional documentation or hear testimony. 18 U.S.C. § 3664(d)(4). Any dispute regarding the amount or type of restitution is resolved by the court, under a preponderance of the evidence standard. *Id.*

The Court first will examine the pre-sentence report, and then consider the parties' arguments. The pre-sentence report here contains no information regarding any of the victims or the amount of restitution owed to each victim, and an addendum noted that the amount of restitution and number of victims was still to be determined. Pre-Sentence Report Addendum, ECF No. 13–1 (Dec. 5, 2019). Thus, the Court must determine the number of victims and any loss owed to any victim based on the complete record. *See, e.g.,* Gov't Sent. Mem. at 8–16.

The relevant victims alleging items stolen and their estimated value include:

- **Victims G.Y. and E.D. (#1):** They request $1,000.00 in restitution following the theft of $1,000.00 in cash on or about September 10, 2018. *Id.* at 8.[1]

- **Victims C.E. and S.B. (#2):** They request $77.16 in restitution to C.E., following the theft of a gift card worth approximately $150.00 on or about December 14, 2018. *Id.*

- **Victims J.S. and T.M. (#4):** They request $0.00 in restitution, pending the return of the check valued at $51.75, following the theft of a personal check and legal document on or about January 14, 2019. *Id.*

- **Victims J.S. and R.A. (#8)**: They request $50.00 in restitution, following the theft of a gift card to Buffalo Wild Wings worth approximately $50.00 on or about December 22, 2018. *Id.* at 10.

---

[1] The victim alleges that a woman checked the tracking number of the lost item and noted that she "was the one who scanned it into their system," but then couldn't find it. Gov't Sent. Mem. Ex. #2, ECF No. 20-2 at 1 (Dec. 18, 2019).

5

- **Victims P.P. and J.S. (#18):** They request $20.00 in restitution, following the theft of a greeting card with $20.00 in cash on or about December 2018 or January 2019. *Id.* at 13.

- **Victims V.P and V.P. (#21):** They request $50.00 in restitution to V.P. following the theft of a birthday card with $50.00 in cash on or about March 2018. *Id.* at 14.

- **Victims A.O. and P.O. (#22):** They request $25.00 to A.O. in restitution following the theft of birthday and holiday cards with personal checks totaling $1,700.00 on or about November 20, 2018; December 1, 2018; and December 2, 2018. *Id.* at 15.

- **Victims M.C. and J.N. (#23):** They request $20.00 to M.C. in restitution following the theft of a birthday cards with cash on or about October 2018. *Id.*

- **Victims R.C. and J.N. (#24):** They request $150.00 to R.C. in restitution following the theft of birthday cards with personal checks totaling $1,700.00 between 2017 and 2018. *Id.*

- **Victim T.D. and T.LNU and FNU LNU-1 (#25):** They request $109.00 to FNU LNU-1 in restitution following the theft of birthday and holiday cards with personal checks worth approximately $149.00 between August 2017 and December 2018. *Id.* at 16.

- **Victims FNU LNU-2 and FNU LNU-3[2] (#26):** They request $300.00 in restitution to either FNU LNU-2 or FNU LNU-3 following the theft of Walmart gift cards worth approximately $300.00 between September 2018 through January 2019.

- **Victim K.S. (#27):** They request $59.00 in restitution following the theft of birthday and greeting cards of which the contents and cost of postage cost approximately $59.00 between July 2019 and December 2019. Gov't Reply at 1, 5.; Gov't Reply Ex. 1, ECF No. 34-1 (Mar. 20, 2020) ("Victim #27 E-Mail").

Ms. Lewis agrees to pay restitution to C.E. (Victim #2) in the amount of $77.16, because of the statements made by the victim "regarding her interactions with Ms. Lewis on the day the

---

[2] The Government argues that for victims not yet identified, "FNU LNU," restitution should be paid and then held in an escrow account until the victims have been identified. Gov't Sent. Mem. at 16.

card was mailed." Def.'s Mem. at 4. She also agrees to pay restitution to P.P. and J.S. (Victim #18) in the amount of $20.00, as that greeting card was found in her possession the day she was interviewed and "the sender claimed that the card originally contained $20." *Id.* The Court therefore need not analyze the claims as to Victims #2 or #18.

Accordingly, restitution will be awarded to Victim #2 and Victim #18 in the total amount of $97.16.

Whether restitution is owed to Victims #1, #4, #19, #22, #23, #24, #25, and #26 is still disputed.

For a district court to award restitution to a victim, the MVRA requires direct and proximate cause between the victim's harm and the defendant's criminal activity. *U.S. v. Marino*, 654 F.3d 310, 317 (2d Cir. 2011) (citing 18 U.S.C. §§ 3663A(a)(2) and 3663(a)(2)). "Proximate cause is defined as '[a] cause that directly produces an event and without which the event would not have occurred.'" *U.S. v. Chow*, 760 F. Supp. 2d 335, 340 (S.D.N.Y. 2010) (alteration in the originals) (citation omitted). It is a judicial tool "use to limit a person's responsibility for the consequences of that person's acts . . . [it] reflects the ideas of what justice demands or of what is administratively possible and convenient." *U.S. v. Aumais*, 656 F.3d 147, 154 (2d Cir. 2011) (quotation marks and citation omitted).

### A. Victims #21, #24, #25, #26, and #27

The MVRA is clear that restitution can only be imposed to the extent that the victims of a crime are actually identified[.]" *U.S. v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003) (citing 18 U.S.C. § 3663A(c)(1)(B)). "Identification of victims is a statutory prerequisite to the application of the MVRA." *Id.*; *see also Carnesi v. U.S.*, 933 F. Supp. 2d 388 (E.D.N.Y. 2013) (allowing restitution if the Government submits evidence identifying the victims and amount of loss

7

associated with each victim). It also is clear that restitution requires direct and proximate cause between the victim's harm and the defendant's criminal activity.

As a result, to the extent that the victims are not or cannot yet be identified or any alleged harm occurred outside the defendant's criminal activity, as defined by the Information, then restitution is not appropriate.

Victims #25 and #26 are currently unidentified. Gov't Sent. Mem. at 16. Nor has the Government provided recent information regarding whether or not these have victims have been identified. To the extent that the Government cannot or has not yet identified these victims, the Court will not award restitution to them.[3]

For Victims #21, #24, and #27, each allege thefts outside of the period in the Information or have not provided any information from which the Court can conclude that any theft occurred within the relevant period. *See* Gov't Sent. Mem. Ex. 11, ECF No. 21-11 (Dec. 18, 2019) (Victim #21 alleges theft in March 2018; Victim #24 alleges theft which began as early as 2017[4], and Victim #27 alleges theft in 2019, after Ms. Lewis no longer worked at the post office);Victim #27 E-mail.

Because all of these victims, #21, #24, #26, and #27 either cannot be identified or do not allege that a theft occurred during the period of criminal activity charged by the Government, the Court accordingly will not award restitution to Victims #21, #24, #26, and #27.

B.      **Victim #4**

As of December 2019, Victim #4 did not seek any restitution, pending the return of the

---

[3] While the MVRA disallows restitution to unidentified victims, if within sixty days of this order, the Government submits evidence identifying both the victim (or any other) and the amount of loss, the Court may amend this restitution order. *See Carnesi v. U.S.*, 933 F. Supp. 2d 388, 399 (E.D.N.Y. 2013) (allowing the Government sixty days to submit evidence and identify the amount of each victim's loss).

[4] Victim #24 has not provided information that the theft of the gift card they seek restitution for occurred during the relevant period.

check. Gov't Sent. Mem. at 9. The Court has no information regarding whether or not the check has been returned.

Without more information that the check has not been returned, the Court will not award restitution to Victim #4.

### C. Victims #1, #8, #22, and #23

Victims #1, #8, #22, and #23 seek a total of $1,095.00.

Based on the record evidence, it is more likely than not that Ms. Lewis stole the Victims' mail in question. *See Paroline*, 572 U.S. at 445 ("So to say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result.").

All of these victims claim losses connected to the theft of their mail during the relevant period. Ms. Lewis clearly worked at the post office at this time, and based on the other evidence in this record, Ms. Lewis was known to have indiscriminately stolen mail and taken proceeds from them. *See* Government Reply at 2("[T]here existed 3/5 odds, or a 60% chance, that a gift card sent through the Plymouth Post Office would be stolen. Once the card was stolen, there existed 3/3/ odds, or a 100% chance, that it was stolen by Careema Lewis."); *id.* at 3 (noting that, based on the postal stamps visible on envelopes, Ms. Lewis had collected mail over the course of the week which correlated to roughly forty-five victims). *Id.* at 3. Other than to speculate that these victims could have suffered losses some other way, Ms. Lewis has not rebutted these claims.

Based on this evidence, the Court finds that more likely than not these victims suffered losses as a result of Ms. Lewis' criminal activity. These losses had "a sufficient connection to the result." *Paroline*, 572 U.S. at 445.

Accordingly, restitution will be awarded to Victims #1, #8, #22, and #23 in the amount of $1,095.00.

### III. CONCLUSION

For the reasons explained above, the Court **GRANTS** the Government's motion and orders Ms. Lewis to pay restitution in the total amount of **$1192.16** to Victims #1, #2, #8, #18, #22, and #23.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of March, 2020.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge